WILLIAM WALK

*v.*

STATE COMPENSATION COMMISSIONER, AND HUTCHINSON COAL COMPANY

(No. 10214)

Submitted January 11, 1950. Decided April 4, 1950.

LOVINS, JUDGE, dissenting in part.

*Dayton, Campbell & Love, Charles M. Love, Thomas W. Moses,* for appellant.

*Hillis Townsend,* for appellee.

HAYMOND, JUDGE:

This is an appeal by the employer, Hutchinson Coal Company, from an order of the Workmen's Compensation Appeal Board of June 11, 1949, affirming an order of the State Compensation Commissioner of February 25, 1949, which awarded the claimant, William Walk, fifty per cent permanent partial disability for an injury which he sustained as an employee of the company on January 29, 1946. Upon the petition of the employer this appeal was granted by this Court on October 3, 1949.

The claimant was injured in the course and as a result of his employment while operating an electric drill in the mine of his employer in Logan County on January 29, 1946. An appliance on the machine caught in his clothing and severely lacerated and injured his genitals. The claim was promptly reported and the claimant was hospitalized and treated for his injury. He was discharged from the hospital on May 13, 1946, and returned to his regular work on June 1, 1946. For the period of January 29, 1946, to June 1, 1946, when he resumed his regular work, the claimant was awarded and paid total temporary disability benefits.

The questions presented for decision upon this appeal are: (1) Whether the injury is compensable; and, if so, (2) whether the evidence justifies an award of fifty per cent permanent partial disability. No question is raised with respect to the award and the payment to the claimant of total temporary disability benefits between the date of his injury and the date he resumed work.

The claimant was examined by several doctors and the medical reports show that the injury has resulted in pain to the claimant in the normal use of his sex organs, the

permanent loss of the mechanical ability to engage in sexual intercourse, and a psychological condition the ultimate effect of which is presently undetermined with respect to his capacity to work. The medical reports also indicate that the injury, which is permanent except the pain which in time will probably disappear, has resulted in no permanent disability which will prevent, or has prevented, in any substantial degree, the claimant from performing any kind of work.

The evidence produced at hearings held at Logan and Charleston in 1947 and 1948 is brief and consists of a statement of the earnings of the claimant from his regular employment from June 1, 1946, when he resumed his former work, to June 24, 1947; a stipulation of facts agreed to by the representative of the claimant and the attorney for the employer; and the testimony of a doctor who examined but did not treat the claimant. The statement shows that the claimant worked regularly upon his return to the same employment after his injury, that he earned $4,538.46 during the period June 1, 1946, to June 24, 1947, or $4,192.92 for one year's work from June 1, 1946, and indicates that his earning capacity had not been impaired during that time. The stipulation constituted proof that the record of work and earnings by the claimant represented his share of the labor performed by a group of four or five men in loading coal at the mine where he worked as a member of the group; that, because of his injury, the other men with whom he worked performed most of the hard labor; that he is unable to drag rails or do any heavy work, but that he does shovel coal when he is on his knees. The testimony of the doctor was that the claimant, as a result of the injury, had lost the ability to engage in the sexual act but there was no disability with respect to his capacity to work and earn a living. On cross-examination the doctor did not give any positive answer relative to the effect of the injury upon the mental attitude of the claimant. To the only question asked on that subject: "Doctor, does an injury such as he suffered causing such a result as you find have any effect upon his mental attitude?", the

doctor replied: "That is a hard question to answer correctly. Some men it may, others it may not."

As grounds for reversal of the orders of the Workmen's Compensation Appeal Board and the State Compensation Commissioner awarding compensation to the claimant, the employer insists that the injury is not compensable but that if it is compensable the award of fifty per cent permanent partial disability is not supported by any evidence disclosed by the record.

In support of the first contention of the employer it is asserted that inasmuch as no loss of earning capacity, present or future, has been established, and the injury is not specifically provided for in any schedule set forth in Code, 23-4-6, the claimant is not entitled to an award of compensation for any permanent disability. Though the principal object of workmen's compensation statutes is to compensate an injured employee for loss of earning capacity, this Court has said that the purpose of the workmen's compensation statute of this State is to compensate an employee for impairment of his physical efficiency, *Ashworth* v. *State Compensation Commissioner,* 117 W. Va. 73, 183 S. E. 912; and that the language of the statute grants compensation for disability or impairment of the physical efficiency of an employee. *Johnson* v. *State Compensation Commissioner,* 109 W. Va. 316, 154 S. E. 766. Though loss or impairment of earning capacity is, of course, an important element in the determination of the compensability of an injury, neither can properly be held to be the sole consideration upon which such compensability depends. In a number of cases this Court has recognized the rule that the right of an injured employee to compensation on a permanent disability basis is not defeated by his return to work and his receipt of wages even though his earnings, after such injury, may equal those previously received by him. See *Blosser* v. *State Compensation Commissioner,* 132 W. Va. 112, 51 S. E. 2d 71; *Burgess* v. *State Compensation Commissioner,* 121 W. Va. 571, 5 S. E. 2d 804; *Gay Coal and Coke Company* v. *Workmen's Compensation Commissioner,* 121 W. Va. 200, 2 S. E. 2d

265; *Johnson* v. *State Compensation Commissioner*, 109 W. Va. 316, 154 S. E. 766.

Compensation is intended to take the place of ability to work and ability to work should always be considered in fixing compensation. *Burgess* v. *State Compensation Commissioner*, 121 W. Va. 571, 5 S. E. 2d 804. "The terms 'disability' and 'incapacity', as used in workmen's compensation statutes, seem to be regarded as practically synonymous. The term 'disability', as so used, ordinarily means loss or impairment of earning power, and has been held not to mean loss of a member. However, as used in some statutes, the word 'disability' is not restricted to mere loss of earning power; and the mere fact that an injured workman is employed at the same work and at the same wages as before the injury will not disentitle him to compensation under the act, if his physical efficiency has been substantially impaired." 58 Am. Jur., Workmen's Compensation, Section 282. See also 71 C. J. 814; *Quillen* v. *Wichita Gas Company*, 128 Kan. 9, 275 P. 1075; *Sauvain* v. *Battelle*, 100 Kan. 468, 164 P. 1086; *Woodcock* v. *Dodge Bros.*, 213 Mich. 233, 181 N. W. 976, 17 A. L. R. 203; *Rice* v. *Denny Roll and Panel Company*, 199 N. C. 154, 154 S. E. 69; *Burbage* v. *Lee*, 87 N. J. L. 36, 93 A. 859. Receipt of the same or larger wages after his injury does not necessarily defeat the right of an injured employee to compensation under the workmen's compensation statute of this State. Notwithstanding the receipt of such wages the capacity to earn of the injured workman may be diminished; and under various statutes it has been held that his incapacity is not to be measured solely by the wages or the earnings received by him after his injury. 58 Am. Jur., Workmen's Compensation, Section 284.

Though the evidence consisting of the medical reports and the testimony of a doctor indicate no impairment of the ability of the claimant to work and earn a living, the evidence in the form of the stipulation is that he can not perform heavy work such as moving rails, which he was able to do before his injury. It also indicates that he is required, in shoveling coal, to assume the irregular posi-

tion of being on his knees and that he is unable, because of the injury, to work with the same ease and competency with which he worked before he was injured in discharging that task. The effect of the finding of the commissioner in awarding compensation, affirmed by the Workmen's Compensation Appeal Board, is that the injury sustained by the claimant has substantially impaired his physical efficiency to work.

The appeal board is a fact finding agency and its findings will not be disturbed by this Court unless they are clearly wrong. *Burgess* v. *State Compensation Commissioner,* 121 W. Va. 571, 5 S. E. 2d 804; *Moore* v. *Workmen's Compensation Appeal Board,* 118 W. Va. 578, 191 S. E. 292; *Rasmus* v. *Workmen's Compensation Appeal Board,* 117 W. Va. 55, 184 S. E. 250. By numerous decisions of this Court the workmen's compensation statute of this State must be given a liberal interpretation in order that its beneficent purposes may not be defeated by a strict construction of its terms. *Burgess* v. *State Compensation Commissioner,* 121 W. Va. 571, 5 S. E. 2d 804; *Martin* v. *State Compensation Commissioner,* 111 W. Va. 420, 162 S. E. 486; *Vandall* v. *State Compensation Commissioner,* 110 W. Va. 61, 158 S. E. 499; *Bonner* v. *State Compensation Commissioner,* 110 W. Va. 38, 156 S. E. 847; *Kincannon* v. *State Compensation Commissioner,* 107 W. Va. 533, 149 S. E. 665; *McVey* v. *Chesapeake and Potomac Telephone Company,* 103 W. Va. 519, 138 S. E. 97. In the light of the evidence and the findings of both the commissioner and the appeal board, the physical efficiency of the claimant has been impaired by the injury to the extent that he can not perform his work with the same ease and competency with which he performed it before he was injured or do the same heavy work which he previously was able to do; and the statute, properly construed, applies to his injury and renders it compensable.

The award of fifty per cent permanent partial disability, however, is not supported by the evidence. There was no attempt to determine or develop any psychological effect of the injury upon the ultimate ability of the claimant to

work at his present or any other occupation. It is not entirely unlikely that it will not eventually seriously impair his capacity to work; but the evidence on that feature of the injury and the evidence which establishes the present impairment of his physical efficiency to the extent heretofore indicated and described, with no actual loss, as yet, in his earnings, do not justify an award of compensation on the basis of fifty per cent permanent partial disability. In consequence, the findings with respect to the percentage of disability, under the evidence, are clearly wrong. A finding of the Workmen's Compensation Appeal Board which, upon the proof taken before the commissioner and acted upon by the board, is plainly wrong, will be set aside by this Court. *Miller* v. *State Compensation Commissioner and McCoy Brothers,* 130 W. Va. 771, 45 S. E. 2d 249; *Rasmus* v. *Workmen's Compensation Appeal Board,* 117 W. Va. 55, 184 S. E. 250. As stated in the *Miller* case, in which an award of twenty five per cent permanent partial disability was set aside as inadequate under the evidence in that proceeding, this Court will not direct or indicate the amount or the percentage of an award which should be made in the first instance by the commissioner upon the evidence produced before him, for the reason that upon a remand of this proceeding different or additional facts may be established.

The order of the appeal board of June 11, 1949, and the order of the commissioner of February 25, 1949, in so far as they hold the injury to be compensable, are affirmed, but to the extent that they award the claimant compensation on the basis of permanent partial disability of fifty per cent they are reversed and set aside; and this proceeding is remanded to the commissioner for further consideration and development, with directions to award the claimant permanent partial disability in such amount or on such percentage basis as may be established and justified by the evidence.

*Affirmed in part; reversed in part; remanded with directions.*

Lovins, President, dissenting in part:

In my opinion, the two points of the syllabus of the Court's opinion are correct abstract statements of law. Furthermore, I agree that the first point of the syllabus is applicable to the case at bar. However, I do not believe that the proposition of law stated in the second point of the syllabus is applicable to the record presented us in the present appeal. Hence, this dissent.

Code, 23-4-6, after designating the percentage awards to be made for various specific losses occasioned by a compensable injury, none of which admittedly is applicable to the injury under consideration, provides: "In all other cases permanent disability shall be determined in accordance with the facts in the case * * *." Formerly, it was held that the determination of a percentage of disability in accordance with the above-quoted section of Code, 23-4-6, was an administrative act, and accordingly not reviewable by this Court. *Vandall* v. *Comp. Com'r.*, 110 W. Va. 61, 158 S. E. 499; *Scott* v. *Commissioner*, 111 W. Va. 454, 162 S. E. 483; *Saunders* v. *Comp. Com'r.*, 112 W. Va. 212, 164 S. E. 39; *Jones* v. *Comp. Com'r.*, 112 W. Va. 473, 164 S. E. 661. This was true, notwithstanding the fact that the substantative right to an appeal from an order of the Compensation Commissioner, as provided by Code, 23-5-1, has always been the same, only procedural changes having been made therein.

However, by the enactment of Chapter 137, Acts of the Legislature, 1939, there was added to the above-quoted portion of the Code, 23-4-6, a proviso reading as follows: "*Provided,* That the claimant shall have the right of appeal from the decision of the commissioner as provided by article five of this chapter." Chapter 137, *idem*, further amended the compensation law by adding to Code, 23-5, sections 1-a, 1-b, 1-c and 1-d, all of which relate to an adjustment or modification of a permanent partial disability award previously granted, where a showing of "progression or aggravation in the claimant's condition, or some other fact or facts which were not theretofore

considered by the commissioner in his former findings" can be made.

The opinion in the case of *Blevins* v. *Comp. Com'r.*, 127 W. Va. 481, 501, 33 S. E. 2d 408, which was a case involving an adjustment of a compensation award previously made, contains the following comment: "We have not overlooked what may have been the practice in former days of treating only such matters as went to the claimant's right to compensation as being final disposition of the case, from which an appeal could be taken. 1931 Code, 23-5. But such practice, if ever warranted by the statute, is now clearly foreclosed by the 1939 Act. Chapter 137, Article 4, [obviously meaning Article 5], Sections 1-(a) and 1-(b)." This comment, in so far as it might relate to the determination of an initial percentage award of permanent partial disability, was justified, at the time of the decision in the *Blevins* case, only by reason of the proviso added to Code, 23-4-6, by Chapter 137, *idem,* quoted above.

However, by the enactment of Chapter 131, Acts of the Legislature, 1945, the proviso of Code, 23-4-6, permitting an appeal from an initial percentage award of permanent partial disability, was deleted, although appeals from orders modifying or adjusting a permanent partial disability award continued to be specifically provided for. Accordingly, it is my opinion that, with respect to the right of an appeal from an initial percentage award of permanent partial disability, the doctrine announced in the *Vandall, Scott, Saunders* and *Jones* cases, should be clarified and applied to the instant case.

The cases cited in the Court's opinion all deal with appeals from orders modifying or adjusting awards previously made, and none deals with the right to appeal from an initial percentage award of permanent partial disability. Therefore, the doctrine announced by the Court in the second point of the syllabus herein is applicable to cases wherein an adjustment or modification of a permanent partial disability award previously made is considered, but such doctrine does not and should not be applied in

instances such as the present case, wherein only a determination of the amount of an initial permanent partial disability award has been made.

Furthermore, it should be noted that Code, 23-4-6, provides that the commissioner shall determine the percentage of an initial award for permanent partial disability "* * * in accordance with the *facts* in the case * * *." (Emphasis supplied.)  It seems to me that the gist of the Court's opinion, in reversing the percentage award, is based upon the fact that no physician recommended any specific percentage.  For that reason, the opinion holds that the percentage awarded claimant herein is without basis.  I am of the opinion that the Court in doing so, is attempting to substitute opinion evidence of a medical expert witness for "*facts*" required by the statute.  Expert medical testimony may be a means of determining the "facts" of a case, but such testimony should not be determinative in and of itself.  Such a result would substitute the opinion of a medical expert for the finding of the commissioner.

The "facts" disclosed by this record reveal a serious and painful injury to claimant.  Unquestionably, claimant is now sexually impotent by reason of his injury.  According to the report of Dr. W. T. Henshaw, the commissioner's medical director, there is a strong inference that claimant will develop a psychological neurosis occasioned by his impotency.  Such a result would seem to me to be natural, considering the nature of claimant's injury.  No doubt such a result is one of the "facts" to be considered by the commissioner in accordance with Code, 23-4-6.  It is obvious to me that such fact was considered by the commissioner, and, in my opinion, is sufficient to support the percentage awarded.

Believing that the order of the State Compensation Commissioner, dated February 25, 1949, fixing the percentage of an initial permanent partial disability award, is an administrative act, not subject to judicial review except upon a showing of fraud, arbitrariness or capriciousness,

and that such percentage is amply supported by the record, I would affirm the orders of the said Commissioner and the Workmen's Compensation Appeal Board.